UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-41-GWU

KENNETH PARKER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

>   impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-41 Kenneth Parker

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

09-41  Kenneth Parker

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

09-41 Kenneth Parker

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

09-41 Kenneth Parker

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Kenneth Parker, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of disc bulging in the cervical spine, degenerative disc disease of the lumbosacral spine, arthritis of the right knee, and moderate right atrial enlargement/ventricular enlargement, with a normal ejection fraction of 55-60 percent. (Tr. 17). Nevertheless, based on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Parker retained the residual functional capacity to perform a significant number of jobs in the economy, and therefore was not entitled to benefits. (Tr. 18-23). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 39, "limited" education, and work experience as an auto mechanic helper and rough carpenter could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional restrictions. (Tr. 231). He: (1) could not crawl or climb ladders, ropes, or scaffolds; (2) could occasionally stoop, bend, crouch, kneel, or climb ramps and stairs; and (3) would require a sit/stand option. (Tr. 231-2). The VE responded that such a person could perform the jobs

of production worker and ticket taker, and proceeded to give the numbers in which these positions existed in the state and national economies. (Id.).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Parker alleged disability beginning December 31, 2003 due to bone spurs, scoliosis, and pain in his neck, back, hands, and legs. (Tr. 73). In addition to describing musculoskeletal problems which limited his ability to sit, stand, and lift, Mr. Parker testified that he had been evaluated for a possible heart attack in 2006 and that in the same year one of his left fingertips had been cut off by a lawnmower. (Tr. 224, 226-7).

Medical evidence in the transcript includes a report from Larry Smith, a chiropractor, dated March 9, 2000 recommending that the plaintiff be limited to lifting less than 25 pounds with no crawling, mopping, or stooping motions. (Tr. 120).

After the alleged onset date, Mr. Parker was evaluated by an orthopedist, Dr. Ronald S. Dubin, on two occasions, in December, 2005 for complaints of neck, back, and right knee pain. (Tr. 135). Dr. Dubin's examination showed cervical spine pain with a range of motion reduced to 80 percent of normal, but Mr. Parker had excellent motion in his upper extremities and normal reflexes and sensation.

(Id.). Dr. Dubin also reviewed x-rays showing minimal degenerative changes in the lumbosacral spine and right knee x-rays showing several loose bodies, minimal arthritic changes, and findings consistent with old Osgood-Schlatter's disease.[1] Dr. Dubin obtained MRIs of the affected joints. (Tr. 126-30). He interpreted the cervical spine MRI as essentially normal, but noted there were disc abnormalities and mild central stenosis in the lumbosacral spine, a chronic osteochondral defect in the right knee with a ligamental strain, but no loose bodies. (Tr. 134). He concluded that the problems were mostly non-surgical and should be dealt with on a conservative basis. Mr. Parker could perform activities "as tolerated." (Id.).

Dr. Jules Barefoot performed a consultative physical evaluation in March, 2006. Unlike Dr. Dubin, he found a full range of motion in the cervical spine, with lumbar forward flexion slightly limited to 80 degrees. (Tr. 138). Mr. Parker had a normal gait and normal range of motion of his extremities. (Id.). He was able to squat with some difficulty. There was no abnormality of his motor strength or grip. Dr. Barefoot also reviewed some previous earlier records, including the MRI reports. (Tr. 137). He diagnosed degenerative disc disease of the lumbar spine and chronic cervical pain. (Tr. 138). He felt that the plaintiff had a moderate impairment in his

---

[1] Osgood-Schlatter's disease is defined as "osteochondrosis of the tuberosity of the tibia." Dorland's Illustrated Medical Dictionary, 27th Ed., p. 490. Osteochondrosis is "a disease of the growth . . . centers in children which begins as a degeneration . . . followed by regeneration or recalcification." Id. at 1198.

09-41 Kenneth Parker

ability to perform significantly strenuous work-related activity, specifically repetitive bending, squatting, crawling, and climbing. (Id.). Manipulation was normal.

Approximately a month after Dr. Barefoot's examination, Mr. Parker suffered a partial amputation of the third distal phalange on his left hand, apparently while working on a lawnmower. (Tr. 144). A revision of the amputation was performed at the University of Kentucky Medical Center. (Tr. 165). Apparently the plaintiff did not have any follow-up.

State agency reviewing sources issued opinions on March 31 and August 7, 2006. The more recent assessment, by Dr. Timothy Gregg, included a review of the records related to the plaintiff's finger injury, and included restrictions on gross and fine manipulation on the left as a result. Otherwise, Mr. Parker was limited to medium level exertion, never climbing ladders, ropes, and scaffolds, and occasionally climbing ramps and stairs. (Tr. 195-201).[2]

After the state agency reviewers completed their reports, an earlier consultative evaluation by Dr. Robert Hoskins from April 20, 2006 was introduced into evidence. (Tr. 205). Dr. Hoskins found much more dramatic physical findings than Dr. Barefoot, noting a limitation of lumbar forward flexion to only 40 degrees, a slow, somewhat antalgic gait, and awkward heel-and-toe walking. This

---

[2] It does not appear that the March 31, 2006 opinion was made by a medical source.

physician's evaluation took place slightly after the lawnmower accident, and he noted amputation of the distal phalanx of the left third finger and also that one of the joints of the right second finger was frozen. (Tr. 206). However, he also recorded 100 pounds of grip in both the right and left hands. (Tr. 205). Dr. Hoskins restricted Mr. Parker to lifting no more than 10 pounds occasionally, to less than full-time sitting, standing, and walking, "never" performing any postural activities, and having restrictions on reaching, handling, pushing, pulling, heights, moving machinery, and temperature extremes. (Tr. 207-11).

Later in 2006, Mr. Parker was given a cardiac evaluation by Dr. Sandesh Patil following an abnormal stress test at his family physician. Dr. Patil obtained an echocardiogram showing normal left ventricular systolic function with an ejection fraction of 55 to 60 percent, "moderate" right atrial and ventricular enlargement, and mild tricuspid regurgitation. (Tr. 171). A treadmill exercise stress test was terminated after nine minutes when the target heart rate was reached, with no evidence of chest pain. (Tr. 172). He showed good exercise tolerance. A one-day cardiolyte perfusion study did show an inferior defect, but with normal wall motion and an ejection fraction of 60-65 percent. (Tr. 173). No functional restrictions are suggested.

The ALJ discounted Dr. Hoskins's restrictions because the physician had stated that they were partially derived from the plaintiff's subjective report, and

11

because the activity restrictions were contradicted by the good exercise tolerance shown in treadmill testing.  (Tr. 21).  The plaintiff objects to this conclusion on appeal, but since both Dr. Hoskins and Dr. Barefoot were one-time examiners, the ALJ was not required to give greater weight to Dr. Hoskins, in any case.  Dr. Barefoot also had the benefit of a review of the MRI reports, at the very least.

However, the ALJ did not provide any rationale for declining to accept the manipulative limitations assessed by Dr. Gregg, the state agency reviewer.  The Commissioner's regulations at 20 C.F.R. § 404.1527(f)(2)(i) state that while an ALJ is not bound by findings made by state agency reviewers, their opinions must be considered as opinion evidence, and if not given controlling weight, the ALJ must explain the weight they are given.  Social Security Ruling (SSR) 96-6p provides that the opinion of a state agency medical source may be entitled to greater weight than even a treating source opinion if the reviewer has more detailed and comprehensive information.  In the present case, Dr. Barefoot did not examine the plaintiff after his finger injury, and the only other physician who did so, Dr. Hoskins, noted a "remarkable impairment in regard to fine manipulations of the fingers."  (Tr. 207).  SSR 83-14 cautions that any limitation on the use of the hands to grasp, hold, and turn objects "must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work."  Id. at 12.  Therefore, the failure to provide a rationale for

09-41 Kenneth Parker

disregarding Dr. Gregg's manipulative limitations cannot be described as harmless error.[3]

The decision will be remanded for further vocational development.

This the 23rd day of December, 2009.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

---

[3] The ALJ did note Dr. Hoskins's finding that the plaintiff had 100 pounds grip strength in both hands in the context of discounting the physician's lifting and carrying restrictions. (Tr. 20). This finding alone, however, is not inconsistent with Dr. Gregg's limitations, since the physician had noted that sensation and strength were intact. (Tr. 197).